**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Maria Veloz,<br><br>                    Plaintiff,<br><br>v.<br><br>Green Tree Servicing LLC,<br><br>                    Defendant. | No. CV-13-00915-PHX-DGC<br><br>**ORDER** |

Plaintiff Maria Veloz has filed a motion for summary judgment as to her claim that Defendant Green Tree Servicing LLC violated 12 U.S.C. § 2605(g). Doc. 47. Defendant has also filed a motion for summary judgment. Doc. 49. The motions are fully briefed. For the reasons that follow, the Court will deny Plaintiff's motion and will grant in part and deny in part Defendant's motion.[1]

**I.    Background.**

Plaintiff owns real property located at 4142 N. 48th Avenue, Phoenix, Arizona. Doc. 49 at 1. In 2006, Plaintiff executed a Deed of Trust against the property to secure a loan. Doc. 1, ¶ 7. Defendant now holds a beneficial interest in the Deed of Trust, (*id.*, ¶ 10; Doc. 49 at 2), and is the servicer of Plaintiff's loan (Doc. 1, ¶ 11). As a condition of the Deed of Trust, Plaintiff is required to maintain a homeowner's insurance policy.

---

[1] Plaintiff's request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

1 Plaintiff makes payments to Defendant, and Defendant impounds funds in an escrow
2 account and pays the homeowner's insurance from those funds. Doc. 49 at 2. Plaintiff
3 obtained an insurance policy through Mercury Insurance Group (the "Mercury policy"),
4 which was effective through January 20, 2013. *Id.* Upon the expiration of the Mercury
5 policy, no payment was made to renew the policy. Plaintiff alleges that her insurance
6 agent, Mickey Clayton, noticed the nonpayment on January 23, 2013, contacted
7 Defendant the following day, and was notified that Defendant would "send the insurance
8 premium immediately to Mercury." Doc. 1, ¶¶ 16-18. Plaintiff then alleges that she
9 received a letter from Defendant on January 28, 2013, stating that it had not received a
10 bill from her insurance company. *Id.*, ¶ 19. According to Plaintiff, Mr. Clayton again
11 contacted Defendant on February 5, 2013, faxed Defendant evidence of insurance, and
12 was told that the insurance payment would be delivered via overnight mail. *Id.*, ¶ 20.
13 When Plaintiff called Defendant on February 15, 2013, she was informed that the
14 insurance premium had not been paid. *Id.*, ¶ 21. She then contacted Mr. Clayton, who
15 she alleges then faxed the insurance information to Defendant "for the third time." *Id.*,
16 ¶ 23. Mr. Clayton was apparently told by Defendant on February 18, 2013, that the
17 premium would be sent the following day. *Id.*, ¶ 24.

18 Defendant contends that it did not receive notification of the lapse in Plaintiff's
19 insurance until February 18, 2013, and that it sent Plaintiff letters on January 28 and
20 February 11, 2013, requesting a copy of her insurance bill. Doc. 49 at 2. Defendant
21 further contends that it issued a check to Mercury Insurance on February 26, 2013 and
22 forwarded it to Mr. Clayton's office. *Id.* at 3.

23 On March 3, 2013, Plaintiff attempted to make a claim with Mercury Insurance for
24 water damage in her kitchen. Doc. 1, ¶ 25. Her claim was denied the following day
25 because her policy had been canceled on January 21, 2013. *Id.*, ¶ 26. Mr. Clayton again
26 contacted Defendant and was allegedly notified that payment had been sent to Mercury
27 on February 29, 2013. *Id.*, ¶ 27. Mr. Clayton's office received a check from Defendant
28 on March 11, 2013, which he immediately sent to Mercury. *Id.*, ¶¶ 28-29. Mercury

refused to reinstate the policy. *Id.*, ¶ 31. Then, on March 25, 2013, Defendant obtained a "force-placed" policy from Assurant (the "Assurant policy") on Plaintiff's property effective February 2, 2013. Doc. 49 at 3. The Assurant policy did cover Plaintiff's claim and Assurant issued a check to Plaintiff in the amount of $21,930.12 on May 11, 2013. *Id.* Plaintiff, however, alleges that the damage to her home was "approximately $48,000" (Doc. 1, ¶ 32) and included "issues with mold" that made her home uninhabitable and forced her and her family to relocate for five months (Doc. 54 at 10-11). The Assurant policy did not cover expenses related to mold, relocation costs, or storage costs. *Id.* at 11.

Plaintiff commenced this action alleging violations of portions of the Real Estate Settlement Procedures Act ("RESPA"), namely 12 U.S.C. § 2605(g), § 2605(e), § 2605 (k) and (l), and later added a claim for negligence. Doc. 49 at 4.

## II. Legal Standard.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. Analysis.

### A. Damages.

Defendant argues that, as a threshold matter, it is entitled to summary judgment on each of Plaintiff's claims because she has not offered any proof of damages. Doc. 49 at 5. In response, Plaintiff has provided an affidavit in which she states that (1) her home was temporarily unfit to live in (Doc. 54, ¶ 14); (2) "Assurant refused to take any action

1  regarding the mold and refused to cover expenses incurred due to loss of use of the
2  kitchen," (*id.*, 18); (3) she and her family had to move out of their home and Assurant
3  would cover neither their added living expenses nor the cost of storing their belongings
4  (*id.*, ¶¶ 20-21); (4) she was charged $266 for the force-placed Assurant insurance policy
5  (*id.*, ¶ 24); (5) she and her family "were physically sick and mentally distressed by
6  [Defendant]'s failure to help [them]," (*id.*, ¶ 27); and (6) she had to purchase a new
7  homeowner's insurance policy at an increase of $161.47 over the cost of the Mercury
8  policy (*id.*, ¶ 28).  In response, Defendant argues that Plaintiff has already been
9  compensated by Assurant for the cost of replacing her kitchen and there is no evidence in
10 the record that Plaintiff would be "entitled to mold remediation under any insurance
11 policy." *Id.* at 6-7 (emphasis original).

12         Summary judgment is appropriate against a party who "fails to make a showing
13 sufficient to establish the existence of an element essential to that party's case, and on
14 which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  To
15 recover mold-related expenses from Defendant due to the lapse of the Mercury policy,
16 Plaintiff must show not only that she incurred the expenses, but also that the Mercury
17 policy would have covered them.  Plaintiff has identified no portion of the Mercury
18 policy that provided coverage for mold remediation or additional living, storage, or repair
19 expenses.  The Court accordingly will grant summary judgment in favor of Defendant as
20 to any costs associated with the mold in Plaintiff's home.

21         As noted above, Plaintiff's affidavit asserts that she was charged a fee of $266.00
22 for the force-placed Assurant policy, she was physically sick and mentally distressed as a
23 result of Green Tree's actions, and she was forced to purchase a new insurance policy
24 that cost $161.47 more than the Mercury policy.  *See* Doc. 54 at 10-12.  In support of
25 these claims, Plaintiff provided a copy of her escrow account statement showing that a
26 disbursement was made on March 27, 2013 for $1,624.00 for hazard insurance and that
27 only $1,358.00 was credited back to her escrow account on April 8, 2013 – a difference
28 of $266.00.  *Id.* at 23.  Defendant does not offer any explanation for the discrepancy.

Had the Mercury policy been timely paid, Plaintiff's account would not have been charged for any force-placed insurance. A trier of fact could conclude that Plaintiff was charged a fee for the force-placed insurance.

The escrow account statement also shows that funds in the amount of $692.47 were disbursed for Plaintiff's new insurance policy on April 8, 2013. *Id.* Plaintiff alleges that this policy was for the period from April 3, 2013 to April 4, 2014. *Id.* at 12. With her motion for summary judgment, Plaintiff presented a renewal statement for the Mercury policy showing that the premium for the period from January 21, 2013 through January 21, 2014 was $584.00. Doc. 48-2 at 5. The difference between the amount paid for Plaintiff's new insurance policy and the amount she alleges she would have paid for the Mercury policy is $108.47, rather than $161.47. Defendant has provided the invoice sent by Mickey Clayton Insurance on February 18, 2013, requesting payment in the amount of $1,100. Doc. 50-8 at 3. The actual cost of the Mercury policy therefore appears to be in dispute. In any event, the Court concludes that Plaintiff has provided evidence sufficient to create an issue of material fact as to whether she was damaged by the alleged additional cost for her new insurance.

With regard to Plaintiff's statement that she became physically sick and suffered mental distress, courts have held that damages for emotional distress are available under RESPA. *See Rawlings v. Dovenmuehle Mort., Inc.*, 64 F. Supp. 2d 1156 (M.D. Ala. 1999) (noting that RESPA has been construed by other courts as a consumer protection statute and broadly interpreting "actual damages" in § 2605(f) to include "mental anguish damages"); *Johnstone v. Bank of Am. N.A.*, 173 F. Supp. 2d 809, 814-15 (N,D. Ill. 2001) (adopting the analysis from *Rawlings*). Plaintiff's assertion that she was physically sick and suffered emotional distress as a result of Defendant's refusal to help her – to the extent it is unrelated to the lack of coverage for mold-related issues – is sufficient to create an issue of fact on damages.[2]

---

[2] Plaintiff's affidavit states that she and her family became physically sick and suffered emotional distress. Plaintiff's family members are not plaintiffs in this case, so only Plaintiff's claims of sickness and distress may be asserted.

Finally, the only statutory damages available under RESPA are found under § 2605(f)(1)(B) which provides up to $2,000 "in the case of a pattern or practice of noncompliance with the requirements of this section[.]" 12 U.S.C. § 2605(f)(1)(B). Plaintiff has neither alleged nor provided evidence of a pattern or practice of noncompliance on the part of Defendant. The Court therefore will enter summary judgment for Defendant on the issue of statutory damages.

The Court will grant summary judgment in favor of Defendant on the issues of expenses associated with the mold in Plaintiff's home and statutory damages. The Court will deny Defendant's motion for summary judgment on the alleged $266.00 fee charged to Plaintiff for the Assurant policy, the alleged discrepancy in cost between the Mercury policy and the new insurance, and Plaintiff's physical and mental distress to the extent they do not arise from mold and mold-related issues.

**B.     12 U.S.C. § 2605(g).**

Plaintiff argues that Defendant is liable under 12 U.S.C. § 2605(g), which provides that where the terms of a mortgage loan require the borrower to pay money into an escrow account "for the purpose of assuring payment of taxes, insurance premiums, and other charges," the loan servicer shall make payments from the escrow account "in a timely manner as such payments become due." Plaintiff argues that because Defendant did not make a payment to Mercury Insurance before the policy was cancelled, it has violated this provision of the statute. Doc. 47 at 3. Defendant responds that it is "entirely unclear that there is any private right of action under [§ 2605(g)]," and that, in any event, Plaintiff should not prevail because she "failed to fulfill her obligation [] to timely procure and pay for homeowners' insurance" and "cannot show that there was any money in [her] escrow account to pay the insurance premium[.]" Doc. 49 at 7.

As an initial matter, whether there were sufficient funds in Plaintiff's escrow account is of no consequence. Servicers are required to advance funds in order to "make disbursements in a timely manner as long as the borrower's payment is not more than 30 days overdue." 24 C.F.R. § 3500.17(k)(2). Defendant has not alleged that Plaintiff's

account was more than 30 days overdue at any time. Thus, insufficient funds in Plaintiff's escrow account would not relieve Defendant of its obligation to disburse payments.

Additionally, a private right of action does exist for violations of § 2605. Section 2605(f) states that, in the case of an action by an individual, "[w]hoever fails to comply with any provision of this section shall be liable to the borrower for each such failure" in an amount equal to the sum of (1) any actual damages to the borrower as a result of the failure; and (2) any additional damages up to $2,000, as the court may allow, in the case of a pattern or practice of noncompliance. 12 U.S.C. § 2605(f)(1)(A)-(B). This language clearly establishes that violations of § 2605 give rise to liability.

Defendant argues that it "was not provided with the necessary information to pay the premiums on the insurance policy until well after the policy had lapsed." Doc. 49 at 8. Plaintiff has provided evidence that Judith Espinoza, an employee from Mickey Clayton Insurance, called Defendant on January 24, 2013 and "advised [Defendant] to pay the premium to Mercury Insurance." Doc. 48-7, ¶ 7. Plaintiff also alleges that Ms. Espinoza spoke to Defendant again on February 5, 2013 and faxed evidence of insurance to Defendant on that date. *Id.*, ¶ 8. Ms. Espinoza apparently contacted Defendant again on February 18, 2013 and sent another fax. *Id.*, ¶ 9. The policy's 30-day grace period expired on February 20, 2013, and the policy lapsed. Doc. 47 at 3-4. Defendant contends that the evidence of insurance sent by Ms. Espinoza on February 18, 2013 was for the previous year. Doc. 50, ¶ 13. Defendant does not specify when it received the appropriate evidence of insurance, but notes that it sent a check to Mickey Clayton Insurance on February 26, 2013. *Id.*, ¶ 14. Plaintiff has offered evidence to show that her insurance agent provided Defendant with the policy renewal information as early as February 5, 2013. Defendant offers evidence to show that the evidence of insurance sent by Plaintiff's insurance agent on February 18 was incorrect. This factual dispute precludes the entry of summary judgment for either party. A trier of fact must determine when and in what form Defendant received Plaintiff's insurance renewal information.

**B.     12 U.S.C. § 2605(e).**

Section 2605(e) provides that if a servicer receives a "qualified written request" ("QWR") from a borrower "for information relating to the servicing of [the] loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days . . . unless the action requested is taken within such period." 12 U.S.C. § 2605(e)(1)(A). A QWR is "a written correspondence" that (1) includes or enables the servicer to identify the name and account of the borrower and (2) includes a statement of the reasons for the borrower's belief that the account is in error or provides sufficient detail regarding other information sought. § 2605(e)(1)(B)(i)-(ii). Defendant argues that at no time has Plaintiff submitted a QWR and, even if she did, Plaintiff has offered no proof that Defendant failed to respond within five days. Doc. 49 at 9-10. In fact, Defendant contends that "Plaintiff acknowledges that Green Tree responded to Plaintiff's demand letter within five days[.]" *Id.* at 10. Plaintiff argues that no written response was received and contends that Defendant did not take any action until May 8, 2013. Doc. 53 at 12. Defendant also argues that if Plaintiff's April 3 letter was a QWR and Defendant did not respond, Plaintiff has produced no evidence of damages. Doc. 49 at 10.

Defendant has produced evidence of a letter sent by Plaintiff's counsel on April 3, which contains Plaintiff's name and information about what Plaintiff believes to be problems with her account, and requests that Defendant take action. Additionally, Defendant's assertion that it responded to Plaintiff's letter within five days is not supported by the record. Thus, a trier of fact could conclude that the April 3, 2013 letter constitutes a QWR and that Defendant failed to respond or take appropriate action. As to damages, Plaintiff supplied an affidavit stating that she suffered mental distress as a result of "Green Tree's failure to help[.]" Doc. 54 at 12. The Court will not grant summary judgment for Defendant on this issue.

**C.     12 U.S.C. § 2605(k) and (l).**

Defendant argues that Plaintiff's claim on this issue "fails on its face, since the insurance with Assurant was cancelled in approximately April 2013[.]" Doc. 49 at 11.

1 Defendant further argues that "there is no indication that Plaintiff has any private right of action under [§ 2605(k) and (l)] with respect to the force-placed insurance." *Id.* Defendant's private right of action argument fails for the reasons discussed above. *See* 12 U.S.C. § 2605(f)(1).

Section 2605(l)(1) provides that a servicer "may not impose any charge on any borrower for force-placed insurance unless the requirements of this subsection have been met." 12 U.S.C. § 2605(l)(1). Requirements include sending a notice via first-class mail, sending a second notice at least 30 days after the first notice, and failure by the borrower to provide evidence of insurance within 15 days of the second notice. § 2605(l)(1)(A)-(C). Plaintiff has alleged that she was charged a fee for the force-placed insurance and has provided an escrow account statement showing that she was not credited the full amount of the Assurant policy. Doc. 54 at 12, ¶ 24, 23. Defendant has not refuted Plaintiff's allegation that she was charged a fee for the force-placed insurance, and has not provided any evidence demonstrating its compliance with §2605(k) and (l). The Court will not grant summary judgment for Defendant on this claim.

### D.  Negligence.

Under Arizona law, "[t]o recover in a negligence action, a plaintiff must prove each element of negligence – the existence of a duty, breach of that duty, causation, and damages." *Saucedo ex rel. Sinaloa v. Salvation Army*, 24 P.3d 1274, 1278 (Ariz. Ct. App. 2001). Defendant argues that, as a matter of law, there is no cognizable duty Defendant owes to Plaintiff to pay the insurance premium on time. Doc. 49 at 11.

The existence of a duty is a matter of law for the Court to decide. *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007). "Duties of care may arise from special relationships based on contract, family relations, or conduct undertaken by the defendant." *Id.* (citing *Stanley v. McCarver*, 92 P.3d 849, 851 (Ariz. 2004)). A duty is "an obligation requiring the defendant to conform to a certain standard of conduct in order to protect others against unreasonable risks." *Gilbert Tuscany Lender, LLC v. Wells Fargo Bank*, 307 P.3d 1025, 1028 (Ariz. 2013). In evaluating the existence of a

duty, Arizona courts look to: "(1) the relationship between the parties and (2) public policy considerations." *Id.* "Public policy can be found in statutes and common law." *Id.*

Plaintiff points to language in the Deed of Trust which states that "[Defendant] shall apply the [Escrow account] Funds to pay the Escrow Items no later than the time specified under RESPA." Doc. 33-2 at 5, ¶ 3. The term "Escrow Items" includes "premiums for any and all insurance required by Lender[.]" *Id.* Plaintiff also argues that "the relationship between the parties would also support this court's imposing a duty on [Defendant]" because "[b]orrowers have a reasonable expectation" that their lender will submit payments for insurance "in a timely manner." Doc. 53 at 9. Finally, Plaintiff argues that "public policy considerations favor imposing a duty on [Defendant] in these situations given the inequality of [Defendant's] position of control and authority over [Plaintiff]'s unsophisticated legal knowledge." *Id.*

Section 2605(g) requires servicers to make payments from the escrow account "in a timely manner as such payments become due," and 24 C.F.R. § 3500.17(k)(1) defines timely as "on or before the deadline to avoid a penalty[.]" "A statute may establish a duty of care if it 'is designed to protect the class of persons, in which the plaintiff is included, against the risk of the type of harm which has in fact occurred as a result of its violation[.]'" *Gilbert Tuscany Lender*, 307 P.3d at 1028 (citing *Estate of Hernandez v. Ariz. Bd. of Regents*, 866 P.2d 1330, 1339 (Ariz. 1994)). Courts have found that RESPA was intended to be a "remedial consumer-protection statute." *Rawlings*, 64 F. Supp. 2d at 1165.

RESPA protects borrowers by insuring "that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process" and by preventing "unnecessarily high settlement charges caused by certain abusive practices[.]" *Id.* (citing 12 U.S.C. § 2601(a)). Plaintiff alleges that she was harmed by Defendant's failure to comply with RESPA's requirements. Given the requirements of RESPA, the terms of the Deed of Trust, and the relationship of the

parties, including Plaintiff's reasonable reliance on Defendant's assurance that insurance premiums would be paid, the Court concludes that Defendant owed Plaintiff a duty to pay insurance premiums from the escrow account on time. The Court will not grant summary judgment for lack of such a duty.

**IT IS ORDERED**:

1. Plaintiff's motion for summary judgment on the issue of liability (Doc. 47) is **denied**.
2. Defendant's motion for summary judgment (Doc. 49) is **granted in part** and **denied in part** as set forth above.
3. The Court will set a final pretrial conference by separate order.

Dated this 29th day of May, 2014.

_____
David G. Campbell
United States District Judge